## JAMISON v. CORNELL.

*Boundary — fixed monuments control — practical location — Estoppel.*

A boundary line was set forth in a deed thus, " westerly by a small stream * * *. Reference being had to the plan in the margin will more fully appear." There was a map on the margin of the deed. *Held*, that the stream was a fixed monument and would control the boundary, notwithstanding the map might appear to give a different one.

In order to establish a boundary line by practical location it must be held and marked by a fence or other inclosure, or the land occupied adversely up to it as a recognized one for a sufficient period to bar an entry.

Defendant opened a stone quarry on land he claimed to own, but which belonged to plaintiff, and took stone therefrom without objection on the part of plaintiff. *Held*, that plaintiff was not estopped from asserting title to such land.

APPEAL by defendant from a judgment in favor of plaintiff entered upon a verdict directed by the court.

. The action was brought by William Jamison against Peter Cornell to recover a small piece of land used as a stone quarry. The lands in question were situated on the east side of a small stream which was the western boundary of plaintiff's lands. The lands west of plaintiff's had been in possession of various parties under a contract of sale from the original owner. In 1871, Elias Cornell, who was then in possession, sold defendant, by parol agreement, a small piece of land opposite the place where the stone quarry was opened, upon the eastern part of the lands occupied by Cornell. The lands were wild and had never been cleared, cultivated or fenced.

It was claimed on the part of the defendant that the lands of defendant had been surveyed in 1841, and a line along the general course of the stream, but crossing it several times, established, which excluded from plaintiff's lot, the *locus in quo*, and that plain-

Jamison v. Cornell.

tiff and the occupant of the lands to the west of him were present and participated in the survey, and acquiesced in the line and in its location on a map made by the surveyor.

Such other facts as are material appear in the opinion.

*Burrell & Soule* and *George B. Bradley*, for appellant.

*William Rumsey*, for respondent.

E. DARWIN SMITH, J. At the close of the case at the circuit, two questions were presented for the decision of the court upon requests of the defendant's counsel. One, upon the request to direct a verdict for the defendant upon the ground that by the legal construction of the plaintiff's deed, the western boundary of his premises was fixed by the undisputed evidence locating the survey of Mr. Rice, the surveyor, in the deed, and upon the further ground that the undisputed evidence in the case established a practical location of the line for over twenty years, where the defendant claimed it to be, and that the premises in question were not contained within the plaintiff's deed. And, secondly, to submit the question of practical location to the jury, and also upon the question in respect to the valuable improvements made upon the premises by the defendant constituting an estoppel. These requests were declined by the judge, and the defendant's counsel duly excepted.

So far as the defendant's request was based upon a construction of the plaintiff's deed it was, we think, not well founded. The description in said deed is as follows: " On the south by the south line of said township; on the east by the east line of said lot; on the north by that part of said lot heretofore deeded to John Christler, and westerly by a small stream ; containing sixty-five (65) acres and six one-hundredths of an acre, more or less, as surveyed by Ezekiel Rice, Jr. Reference being had to the plan in the margin will more fully appear." It is quite clear, I think, that it was the intention of the grantors to make the western boundary of the land conveyed to the plaintiff the small stream mentioned in said description. The small stream is mentioned as the boundary of the whole western side of the lot, and this took the grant to the center of said stream. The stream was a monument fixed, certain and enduring, and should control, even if the reference to the map created some uncertainty.

The plan annexed to the deed, according to the small map, or plat, handed to court as a copy, and marked as exhibit B, clearly upon its face fixes the stream as the western boundary of the plaintiff's lot. The map and plan annexed to the case, purporting to be a map since made by the said surveyor, cannot be a true copy of the original map made by him, and is entitled to no credit, as it shows a continuous or straight line running along and crossing said creek six times on its western boundary. The testimony of the surveyor himself does not, I think, establish that this was a true copy of his survey. He states that the stream was a small, crooked, changeable stream, and that he run two different directions to follow the course of the creek, and he did this, as he said, because it was intended, as he supposed, that the division line should be along the creek, and that it was understood at the time that the plaintiff was to have what was east of the creek, and Cornell what was west of the creek ; that the creek had a well-defined, rocky bottom, and some part of it ran in quite a deep gulf.

This evidence does not show, or tend to show, that it was intended to make the western boundary of the creek a straight line, but I think concurs with the deed and shows, that it is quite clear, that the parties, when the plaintiff's deed was given, intended that the western boundary of his lot should be the fixed and permanent monument nature had fixed on the ground at that point, in the small stream running most of the way in the deep gulf.

The learned judge at the circuit was clearly right, also, in holding that there was no evidence of a practical location of the line between the plaintiff's and the defendant's lots, and no evidence proper to be submitted to a jury tending to prove any such location. There never had been any fence on the line, there was no improvement or cultivation on the defendant's side of the creek, near or up to the line claimed by him. The land on both sides of the creek, until quite recently, had been covered with timber and wild. There was no legal basis for the establishment of a line by practical location, which must be a line held and marked by a fence or other inclosure, or the land must be occupied adversely up to it, as a recognized line, for a sufficient period to bar an entry. There must be twenty years of continued occupation and possession up to the asserted line, under claim of title, to overcome the paper title. *Baldwin* v. *Brown,* 16 N. Y. 363 ; *Clark* v. *Baird,* 9 id. 204 ; *Drew* v. *Swift,* 46 id. 209 ; *Robinson* v. *Phillips,* 1 N. Y. Sup. 151.

There was also no basis for the claim that the plaintiff was estopped from asserting his title to the premises in dispute. Such assertion of title involved no loss of any permanent improvements erected and remaining on the land. The defendant had clearly taken from the quarry on the plaintiff's land more than a sufficient quantity of stone to compensate him for all his labor and expenditures in opening said quarry.

The cause was correctly disposed of at circuit, and the judgment should be affirmed.

*Judgment affirmed.*